## Commonwealth v. Baldassari.

*Liquor law—Intoxicating liquor—Fruit juice—Act of March 27, 1923.*

The second proviso contained in section 3 of the Act of March 27, 1923, P. L. 34, cannot be so construed as to exempt from the penal provisions of the act one who produces, for use as a beverage in his own home, from a mixture of raisins and water, a liquor intended to be, and which is, intoxicating—and this, irrespective of whether or not the artificially produced mixture of the water with the sugar which the raisins (dried grapes) contained, was a "fruit juice" within the meaning of the statute.

Demurrer to evidence. Q. S. Washington Co., May Sess., 1923, No. 205.

*Howard W. Hughes*, for Commonwealth; *I. W. Baum*, for defendant.

BROWNSON, P. J., Aug. 27, 1923.—The defendant was indicted for the unlawful manufacture of intoxicating liquors for beverage purposes. The Commonwealth presented at the trial testimony from which a jury could find the following facts:

The defendant placed in barrels a quantity of raisins. Upon them he poured water. (It does not appear that sugar or any other substance was added, and the only sugar present in this mixture of raisins and water seems to have been that which the raisins themselves contained.) He allowed this mixture to remain in the barrels until it had fermented, after which he drew off the fermented liquid into other barrels, wherein he kept it for use as a beverage, and threw away the raisin pulp. All of this was done in the defendant's dwelling. At the time of arresting him, the officers found in the dwelling two barrels of "mash" (*i. e.*, a fermenting mixture of raisins and water) and a barrel and a-half of the finished product. The latter, when analyzed, was found to contain 9.46 per cent. of alcohol by volume. The defendant told the officers that he had made this as "wine" for beverage purposes. The production of liquor of this character was the express purpose of the operation which he carried on. The mash from which the barrel and a-half of finished liquor was made was prepared for the purpose of making it about two weeks previous to the date of the arrest.

At the conclusion of the Commonwealth's case, the defendant demurred to the evidence, and, in support of the demurrer, his counsel argue that he had a lawful right, under the second proviso contained in section 3 of the Act of March 27, 1923, P. L. 34, to manufacture this liquor, and, therefore, he is not guilty of any offence under this indictment.

The 3rd section of the act mentioned prohibits the manufacture, etc., of "any intoxicating liquor for beverage purposes, except as hereinafter set forth." This is followed by two provisos. The first of these states that the act shall not "prohibit the alcoholic contents of malt or brewed liquors from exceeding one-half of 1 per cent. during the process of manufacture only thereof." The second is in these words: "And provided, further, that it shall not be unlawful to manufacture non-intoxicating cider and fruit juices exclusively for use in the private dwelling." It is contended that the liquor which the defendant manufactured is "fruit juice," intended exclusively for use in defendant's private dwelling within the meaning of the latter proviso, and it becomes necessary for us to construe the language thereof.

The occasion and reason for introducing the first proviso into the act are perfectly clear. The form of brewed liquor which is known as "near-beer," and which was not intended to be prohibited by this act, has necessarily, in the course of its manufacture by the customary method, to pass through a stage in which it contains a sufficient quantity of alcohol to render it intoxi-

cating, but in the further progress of the manufacture enough of this is eliminated to take the product out of the category of intoxicating liquor; and the purpose of the proviso was to prevent any possibility of giving to the preceding general words of prohibition a construction which would make unlawful such temporary exceeding of the alcoholic limit, as a step in the manufacturing of what, as a finished product, ready for consumption, is a non-intoxicating liquor.

But there is some difficulty in understanding just why the second proviso, in the form which it bears, should be in the act. It may have been suggested by the last sentence of section 29 of the Federal Volstead Act, which provides that the penalties prescribed by that statute for manufacturing liquor without a permit shall not apply to a person manufacturing non-intoxicating cider and fruit juices exclusively for use in his home. But what occasion was there that the Act of 1923, whose prohibitions, according to its title as well as its language, relate to intoxicating liquors, should contain a proviso making it lawful to manufacture non-intoxicating fruit juices? This is not prima facie or literally either an exemption from, or a limitation of, the operation of the preceding provision that the manufacture of intoxicating liquors shall be unlawful. Does it, as the defendant argues, imply an exemption or limitation taking his case out of the penal provisions of the statute?

We may conjecture that probably the thought which led to this proviso was something like the following: Cider, which is apple juice, and like juices of other fruits, if kept long enough, without being preserved from contact with the bacteria of fermentation carried by the air, will by a natural process develop sufficient alcohol to render them intoxicating. It is likely, then, that this proviso was prompted by a fear that one who has made non-intoxicating cider or fruit juice, with the purpose of using it as such and without the intention of having it ferment until it becomes an intoxicating drink, but has happened to keep it a little too long, until it has produced a prohibited percentage of alcohol, might be held by construction guilty of unlawful manufacture under the act, upon the ground that he caused to be set in operation the forces of nature which brought about the by him unintended result of converting it into an intoxicating drink. If this view be taken of the purpose of the proviso, it will harmonize with the context and with what is manifestly the intended general scope and meaning of the act as a whole. But whether this be or be not a correct view, it does not seem to us possible, in any event, to interpret the proviso, either in the light of the pervading intent of the act of which it is a part or in the light of its own words, as intended to permit the making from fruits, intentionally and purposely, of an intoxicating drink, even though the production of a non-intoxicating fruit juice may be the first step in the process of the manufacture thereof. Indeed, to attempt to legalize this would be a violation of the Federal Constitution.

We are of opinion that the facts of this case show that the defendant has done more than the proviso was intended to permit. Passing over the question whether the artificially-produced mixture of the water with the sugar which the raisins (dried grapes) contained was such a "fruit juice" as the statute refers to, we hold that, even if it can so be regarded, it appears that the liquor found by the officers, which was of an alcoholic content many times that which is permissible, and which he himself characterized as "wine," had been produced by the defendant through a continuous process of manufacture, the intended purpose of which was to produce an intoxicating liquor. He brought together materials capable of fermenting, placed them in a barrel under conditions such that fermentation would occur, and kept them there

4 D. & C.

until, by such fermentation, sufficient quantity of alcohol was formed to make the liquid an intoxicating drink. This result was the aim and purpose of everything that he did, and the liquor was not intended for use before it would become intoxicating. The acts which he did constitute manufacturing intoxicating liquor within the meaning of the law.

And now, Aug. 27, 1923, after argument and due consideration of the defendant's demurrer to the evidence for the Commonwealth, the court overrules the demurrer and adjudges the defendant, N. Baldassari, to be guilty of the misdemeanor whereof he stands indicted.

From Harry D. Hamilton, Washington, Pa.